IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMARCO NICHOLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Honorable Judge |
| TRANSPORTATION | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |
| | ) | |

# COMPLAINT

*Nature of Action*

1. The plaintiff files this lawsuit under Title VII for religious discrimination and retaliation and the Illinois Whistleblower's Act

*Jurisdiction and venue*

2. This Court has jurisdiction under 28 USC §1331 and pendant jurisdiction under 1367(a) and 2000(e)-5 *et seq*.

3. The defendant violated the law and committed the wrongs against the plaintiff within the jurisdiction of the Northern District of Illinois.

*Parties*

**Plaintiff**

4. The plaintiff is a resident in the Northern District of Illinois.

5. Regarding the allegations of the complaint, the plaintiff is an individual protected by Title VII and the Illinois Whistleblower's Act.

**Defendant**

1

6. The defendant is an agency of the State of Illinois.

7. The defendant is a party that can be sued by the plaintiff under Title VII and the Illinois Whistleblower's Act.

**Conditions precedent**

8. The plaintiff has satisfied all conditions precedent before filing this lawsuit. 42 U.S.C. § 2000(e)-5

9. After investigating the plaintiff's EEOC charge, the EEOC on 3 February 2010 determined that substantial evidence existed that the defendant discriminated against the plaintiff based upon his religion and retaliated against the plaintiff.

10. On 29 November 2011, the EEOC issued a right to sue which the plaintiff received on 13 December 2011. Exhibit I.

11. The plaintiff filed his lawsuit within 90 days of receiving the right to sue.

**Statement of facts for all counts of the complaint**

12. For approximately 5 years before December 2007, the plaintiff handled snowplowing for the defendant.

13. In or about December 2007, the plaintiff became a lead supervisor.

14. The plaintiff supervised employees who snowplowed.

15. In or about February 2008, the plaintiff reported to supervisor George Martin that two supervisory employees, Kevin Reynolds and Frank Romanski, on several occasions had been paid for time when such employees were not at work.

16. In or about February 2008, the plaintiff reported to supervisor George Martin that two supervisory employees, Kevin Reynolds and Frank Romanski, on several occasions had removed the defendant's property from the defendant's premises with civilian vehicles.

17. Such property included large numbers of tools, jackhammers, sand, salt, stone and so

forth.

18. In or about February 2008, the plaintiff reported to supervisor George Martin that persons were removing scrap metal belonging to the State from the defendant's property.

19. In or about February-March 2008, when the plaintiff reported to supervisor George Martin that Kevin Reynolds and Frank Romanski were engaging in wrongful conduct, George Martin responded that the plaintiff was causing trouble and that the plaintiff should mind his own business.

20. On or about 1 March 2008, the plaintiff, a Muslim, requested from his supervisor, George Martin, a religious accommodation.

21. The plaintiff requested permission to pray in a quiet place during his lunch break.

22. Supervisor George Martin indicated that he would check into the matter.

23. Not receiving any contact from George Martin, approximately one week later, the plaintiff presented a grievance to George Martin regarding the plaintiff's request for a religious accommodation to pray during his lunch break.

24. George Martin refused to execute the grievance.

25. Therefore, the plaintiff presented his grievance to higher level personnel.

26. Approximately 2 weeks later, the defendant notified the plaintiff that the plaintiff's request for a religious accommodation to pray during his lunch break was denied.

27. In or about the end of March 2008, the plaintiff requested counseling assistance from the employee assistance program.

28. In or about the end of March 2008, the plaintiff sent a correspondence to the defendant's labor relations department expressing concern that he was being threatened by Kevin Reynolds.

29. In such correspondence, the plaintiff indicated that employees had informed him that if

3

the plaintiff continued to complain about Kevin Reynolds and Frank Romanski, the plaintiff would be "f--ked up."

30. The plaintiff indicated that he would defend himself.

31. At or near the end of March 2008, the plaintiff contacted the Illinois Inspector General that supervisory employees, Kevin Reynolds and Frank Romanski were removing State property from State premises and that they were paid for time when they were not at work.

32. Shortly thereafter, on or about 3 April 2008, the defendant placed the plaintiff on administrative leave.

33. The defendant accused the plaintiff of threatening violence in his correspondence to the labor relations department.

34. In or about the end of April 2008, the Illinois Inspector General interviewed the plaintiff regarding the plaintiff's complaint that two employees, Kevin Reynolds and Frank Romanski, were removing State property from State premises and that they were being paid for time when they were not at work.

35. On or about 9 May 2008, the defendant removed the plaintiff from administrative leave and suspended the plaintiff for an alleged threat of violence in his correspondence to the Labor Relations department.

36. On or about 2 June 2008, the defendant terminated the plaintiff.

37. Thereafter, the plaintiff filed a union grievance of the defendant terminating him.

38. On or about 11 July 2008, the plaintiff and a union representative proceeded to the defendant's offices to discuss the plaintiff's union grievance relating to the defendant terminating him.

39. At the 11 July 2008 meeting, the director of personnel was present along with others,

4

whom, upon information and belief, were the defendant's employees.

40. At or near the beginning of the 11 July 2008 meeting, the director of personnel indicated that the plaintiff had filed an EEOC charge for discrimination and retaliation.

41. At or near the beginning of the 11 July 2008 meeting, the director of personnel indicated that he had a document which the plaintiff had to execute before the parties could discuss the plaintiff's grievance of the defendant terminating him.

42. At or near the beginning of the 11 July 2008 meeting, the director of personnel presented a document which the plaintiff had to execute in which the plaintiff had to withdraw his EEOC charge.

43. At or near the beginning of the 11 July 2008 meeting, the plaintiff refused to withdraw his EEOC charge for discrimination and retaliation.

**Count I: religious discrimination**

44. On or about 1 March 2008, the plaintiff, a Muslim, requested from his supervisor, George Martin, a religious accommodation.

45. The plaintiff requested permission to pray in a quiet place during his lunch break.

46. Supervisor George Martin indicated that he would check into the matter.

47. Not receiving any contact from George Martin, approximately one week later, the plaintiff presented a grievance to George Martin.

48. The grievance entailed the defendant failing to respond to the plaintiff's request for a religious accommodation to pray during his lunch break.

49. George Martin refused to execute the grievance.

50. Therefore, the plaintiff presented his grievance to higher level personnel.

51. Approximately 2 weeks later, the defendant notified the plaintiff that the plaintiff's request for a religious accommodation to pray during his lunch break was denied.

52. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides that it shall be an unlawful employment practice for an employer:

    to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

53. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(2) further provides that it shall be an unlawful employment practice for an employer:

    to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

54. The defendant violated Title VII of the Civil Rights Act of 1964, as amended, by denying the plaintiff's request for a religious accommodation to pray.

55. As a direct and approximate result of Defendant' violations of Title VII, the plaintiff has suffered and continues to suffer damages and is entitled to injunctive relief and declaratory relief against the defendant.

*Prayer for Relief*

Wherefore, the plaintiff, DiMarco Nichols, respectfully prays that the court will:

I) order the defendant to make whole Mr. Nichols by providing him with back pay with prejudgment interest, front pay, reinstatement and/or any other affirmative relief to eradicate the past and future effects of their illegal activities against the plaintiff;

II) order the defendant to pay the plaintiff compensatory damages for his emotional pain and suffering, including, but not limited to, loss of enjoyment of life, loss of self-esteem, humiliation, aggravation, frustration and so forth;

III) permanently enjoin the defendant and all persons in active concert or

participation with them from continuing to engage in discrimination;

IV) order the defendant to pay the reasonable costs and attorney's fees to remedy the wrongs committed against the plaintiff;

V) enjoin the defendant to expunge from all records any kind of any negative reference to the plaintiff;

VI) order the defendant to provide favorable and positive recommendations of the plaintiff;

VII) order the defendant to pay an additional amount to offset to the greatest extent possible the negative tax consequences of the plaintiff receiving an award of damages in a single tax year;

VIII) order the defendant to institute and execute policies, practices and procedures, including the appropriate training, to eradicate the effects of past illegal employment practices and to ensure that they do not occur again in the future;

IX) grant all other legal and equitable relief as the court deems proper.

**Count II: retaliation**

56. On or about 1 March 2008, the plaintiff, a Muslim, requested from his supervisor, George Martin, a religious accommodation to pray in a quiet place during his lunch break.
57. Supervisor George Martin responded that he would check into the matter.
58. One week passed and George Martin still had not informed the plaintiff whether he would receive the religious accommodation to pray during his lunch break.
59. Therefore, the plaintiff presented a grievance to George Martin regarding the plaintiff's request for a religious accommodation.
60. George Martin refused to execute the grievance.
61. Consequently, the plaintiff presented his grievance to higher level personnel.

62. Approximately 2 weeks later, the defendant denied the plaintiff's request for a religious accommodation to pray during his lunch break.

63. On or about 3 April 2008, the defendant placed the plaintiff on administrative leave.

64. The defendant accused the plaintiff of threatening violence in his correspondence to the labor relations department.

65. On or about 2 June 2008, the defendant terminated the plaintiff.

66. A similarly situated employee, Mr. Jackson, had engaged in physical violence and/or threatened physical violence, but he was not placed on administrative leave, nor was he suspended or terminated.

67. After the defendant terminated the plaintiff, the plaintiff filed a union grievance of the defendant terminating him.

68. On or about 11 July 2008, the plaintiff and a union representative proceeded to the defendant's offices to discuss the plaintiff's union grievance of the defendant terminating him.

69. At the 11 July 2008 meeting, the director of personnel was present along with others, whom, upon information and belief, were the defendant's employees.

70. At or near the beginning of the 11 July 2008 meeting, the director of personnel indicated that the plaintiff had filed an EEOC charge for discrimination and retaliation.

71. At or near the beginning of the 11 July 2008 meeting, the director of personnel indicated that he had a document which the plaintiff had to execute before the parties could discuss the plaintiff's grievance of the defendant terminating him.

72. At or near the beginning of the 11 July 2008 meeting, the director of personnel indicated that the document stated that the plaintiff would withdraw his EEOC charge.

73. At or near the beginning of the 11 July 2008 meeting, the plaintiff refused to execute the

document as the plaintiff refused to withdraw his EEOC charge for discrimination and retaliation.

74. Therefore, the director of personnel and the defendant's other employees who were present at the meeting ended the meeting, refusing to consider the plaintiff's grievance of the defendant terminating him.

75. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3:

> it shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this chapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this sub-chapter.

76. The defendant engaged in the illegal employment practices prohibited by 42 U.S.C. § 2000e-3 by denying the plaintiff's request for a religious accommodation to pray during his lunch break and retaliating against him for engaging in protected activity.

*Prayer for Relief*

Wherefore, the plaintiff, DiMarco Nichols, respectfully prays that the court will:

I) order the defendant to make whole Mr. Nichols by providing him with back pay with prejudgment interest, front pay, reinstatement and/or any other affirmative relief to eradicate the past and future effects of their illegal activities against the plaintiff;

II) order the defendant to pay the plaintiff compensatory damages for his emotional pain and suffering, including, but not limited to, loss of enjoyment of life, loss of self-esteem, humiliation, aggravation, frustration and so forth;

III) permanently enjoin the defendant and all persons in active concert or participation with them from continuing to engage in discrimination;

IV) order the defendant to pay the reasonable costs and attorney's fees to remedy the wrongs committed against the plaintiff;

V) enjoin the defendant to expunge from all records any kind of any negative reference to the plaintiff;

VI) order the defendant to provide favorable and positive recommendations of the plaintiff;

VII) order the defendant to pay an additional amount to offset to the greatest extent possible the negative tax consequences of the plaintiff receiving an award of damages in a single tax year;

VIII) order the defendant to institute and execute policies, practices and procedures, including the appropriate training, to eradicate the effects of past illegal employment practices and to ensure that they do not occur again in the future;

IX) grant all other legal and equitable relief as the court deems proper.

**Count III: Illinois Whistleblower's Act**

77. In or about February 2008, the plaintiff reported to supervisor George Martin that two supervisory employees, Kevin Reynolds and Frank Romanski, on several occasions had been paid for time when such employees were not at work.

78. In or about February 2008, the plaintiff reported to supervisor George Martin that two supervisory employees, Kevin Reynolds and Frank Romanski, on several occasions had removed the defendant's property from the defendant's premises with civilian vehicles.

79. In or about February 2008, the plaintiff reported to supervisor George Martin that persons were removing scrap metal belonging to the State from the defendant's property.

80. Responding to the plaintiff's complaints that Kevin Reynolds and Frank Romanski were essentially stealing the State's property, George Martin indicated that the plaintiff was causing trouble and that the plaintiff should mind his own business.

81. In or about the end of March 2008, the plaintiff sent a correspondence to the defendant's

labor relations department expressing concern that he was being threatened by Kevin Reynolds.

82. In such correspondence, the plaintiff indicated that employees had informed him that if the plaintiff continued to complain about Kevin Reynolds and Frank Romanski, the plaintiff would be "f--ked up."

83. The plaintiff indicated that he would defend himself.

84. At or near the end of March 2008, the plaintiff contacted the Illinois Inspector General that Kevin Reynolds and Frank Romanski were removing State property from State premises and that they were paid for time when they were not at work.

85. Thereafter, on or about 3 April 2008, the defendant placed the plaintiff on administrative leave.

86. In or about the end of April 2008, the Illinois Inspector General interviewed the plaintiff regarding the plaintiff's complaint that two employees, Kevin Reynolds and Frank Romanski, were removing State property from State premises and that they were being paid for time when they were not at work.

87. On or about 9 May 2008, the defendant removed the plaintiff from administrative leave and suspended the plaintiff.

88. On or about 2 June 2008, the defendant terminated the plaintiff.

89. In or about 2008, there existed in Illinois, the Illinois Whistleblower's Act, 740 ILCS §174.

90. Under the Whistleblower's Act, the defendant is an employer as the defendant is a public body.

91. Under the Whistleblower's Act, the defendant was prohibited from making, adopting or enforcing any policy or rule to preclude employees from reporting illegal activity.

Case: 1:12-cv-01789 Document #: 1 Filed: 03/11/12 Page 12 of 13 PageID #:12

92. Under the Whistleblower's Act, the defendant was prohibited from retaliating against employees who reported or who indicated that they would report illegal activities.

93. Under the Whistleblower's Act, the defendant was prohibited from retaliating against employees who refused to engage in illegal activity.

94. The defendant violated the Illinois Whistleblower's Act by making, adopting or enforcing any policy or rule to preclude the plaintiff from reporting the defendant's illegal activities.

95. The defendant violated the Illinois Whistleblower's Act by retaliating against DiMarco Nichols for complaining that the defendant engaged in illegal activities.

96. The defendant violated the Illinois Whistleblower's Act by retaliating against DiMarco Nichols for his refusal to engage in illegal activities, including the withdrawal of his EEOC charge of discrimination and retaliation.

97. The defendant violated the Whistleblower's Act by retaliating against DiMarco Nichols for complaining against supervisory personnel for being paid when they were not working and for stealing State property.

Wherefore, the plaintiff, DiMarco Nichols, prays that judgment will be entered in his favor and against the defendant, the Illinois Department of Transportation for all relief allowed by law.

Respectfully submitted,

_____
Joseph A. Longo

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9490
Longo-Associates@SBCglobal.net
Attorney No. 53635

12

**CERTIFICATE OF SERVICE**

    I, Joseph A. Longo, an attorney, certify that I served this COMPLAINT by electronic filing on 11 March 2012. Under penalties as provided by law pursuant to Ill. Rev. Stat. Chap 110, Sec 1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

_____
Joseph A. Longo