**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMARCO NICHOLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-CV-1789 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Honorable Thomas M. Durkin |
| TRANSPORTATION *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PETITION FOR ATTORNEY'S FEES
AND COSTS**

NOW COMES Defendants by and through their attorney, Lisa Madigan, Attorney

General for the State of Illinois, hereby responds to Plaintiff DeMarco Nichols' Petition for

Attorney Fees and Costs:

For the litigation of this single-employee discrimination case Plaintiff seeks over $1.7

million dollars ($1,709,345) in attorneys' fees and $4,460.47 in costs, for a total award of

**$1,713,805.47** pursuant to 42 U.S.C. § 2000e-5(k). Defendants object to this excessive and

unreasonable amount. Plaintiff's petition is long on verbosity and short on controlling precedent

in an attempt to convince the Court he is entitled to an amount of attorney's fees that is

unwarranted. Simply put, Plaintiff's fees are not reasonable. For the reasons set forth below, the

Court should award Plaintiff $282,870 for attorney's fees and $4,061.02 for costs, for a total

award of **$286,931.02**. *See* Defendants' Statement of Fees, attached as Exhibit A.[1]

---

[1] Prior to the submission of Plaintiff's fee petition Mr. Longo provided to Defendants his itemized fees for
the entirety of the litigation. Defense counsel responded to every single entry (over 6,000) either agreeing
to the entry or objecting to it and providing the basis of the objection. The attached tables contain
Plaintiff's claimed fees and Defendants' objections. Due to the sheer volume of these entries Defendants
will not go through every entry they object to. As seen below, these entries can fit broadly into several
categories the Supreme Court has delineated as unreasonable. *See Hensley*, 461 U.S. at 434. Defendants

**ARGUMENT**

The district court exercises wide discretion, and its decision to award or deny fees is reviewed with deference. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Pickett v. Sheridan Health Care Center,* 664 F.3d 632, 639 (7th Cir. 2011). In fact, the court has the discretion to deny a fee petition in its entirety. *See, Budget Rent-A-Car Sys. v. Consol. Equity LLC,* 428 F.3d 717, 718 (7th Cir. 2005) (internal citations and quotation marks omitted).

## I. HOURLY RATE

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). The best evidence of the local market rate would be "the amount the attorney actually bills for similar work, but if that rate [cannot] be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. Plaintiff bears the burden of establishing his attorney's market rate. *Id*. If Plaintiff meets his burden, then Defendant has to present evidence on why the attorneys' hourly rate should be lowered. *Pickett*, 664 F.3d at 640. In this case, none of the evidence Plaintiff has presented meets the burden of establishing the market rate for his attorney's work and therefore the hourly rate proposed by Plaintiff for Mr. Longo should be reduced.

### A. Plaintiff's affidavits fail to establish Mr. Longo's market hourly rate

Plaintiff relies on the affidavits of seven individuals (including Mr. Longo) to support the requested fee of $550 an hour. (Plaintiff's Petition for Attorney's Fees ("Pl.'s Pet."), Ex. 1-7). An examination of these affidavits demonstrates several deficiencies that do not support a fee of $550 an hour for Mr. Longo. John P. DeRose (Pl. Pet. Ex. 1) focuses his practice mainly on

---

stand by their objections and maintain that the hours not objected to are the only "reasonable" hours that should be included in the lodestar calculation.

criminal law and his affidavit does not establish his fee in employment case. Robin Potter (Pl. Ex. 2) works primarily as an attorney representing unions, not individual plaintiffs, her focus appears to be on wage and hour law, and she does not establish her fee in employment cases. *See Montanez*, 755 F.3d at 554 (("[c]onclusory affidavits from attorneys 'merely opin[ing]' on the reasonableness of another's fee—unlike affidavits describing what 'comparable attorneys charge for similar services'—have little probative value"). David Lee's affidavit (Pl. Pet. Ex. 3) is a cookie-cutter form he has filed in previous litigation (Lee Affidavit, attached hereto as Exhibit B) and does not represent his specific opinion of the reasonableness of Mr. Longo's rate, and in fact incorrectly refers to Mr. Longo's proposed rate as $600 per hour and not the $550 Plaintiff requests. Aaron Maduff (Pl. Pet. Ex. 4) also copied an affidavit that clearly is a cut and paste job from another case (Maduff Affidavit, attached hereto as Exhibit C) and does not support Mr. Longo's specific claim for an hourly rate of $550 in this matter. John Moran (Pl. Pet. Ex. 6) arbitrarily states he has had "contact with many employment lawyers" and therefore Mr. Longo's rate of $550 per hour is "below market." Dennis Favaro (Pl. Pet. Ex. 7) does not provide an hourly rate nor does he state Mr. Longo's claimed rate is reasonable. *See Pickett,* 664 F.3d at 647. Lastly, Mr. Longo's self-serving affidavit (Pl. Ex. 5) is long on hyperbole and short on actual facts to support his billing rate and fails to properly establish a market rate for his services. *Harper v. City of Chi. Heights,* 223 F.3d 593, 604 (7th Cir. 2000) ("[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services....").

In submitting these deficient affidavits, Plaintiff argues that he has met his "minimal burden" of establishing the market rate. (Pl. Pet. p. 5). However, these affidavits from third-party attorneys, on their own, are not sufficient to support Mr. Longo's rate. "A prevailing party who merely tells an attorney in a related area of law the number of hours he spent on a case

would only provide the attorney attesting that such hours were reasonable a skeletal framework of a case.  It is the court and the judge who understands the finite details and intricacies of a case." *Sommerfield v. City of Chicago*, 2013 WL 139502, at *3 (N.D. Ill. Jan. 10, 2013) (calling such affidavits "ludicrous").  Moreover, Mr. Longo's argument that he is a licensed attorney for 30 years and therefore deserves even $395 per hour has been summarily rejected by another court.  *Sommerfield v. City of Chicago*, WL 3675722, at *2 (N.D. Ill. Aug. 25, 2017)  ("At bottom, the arguments boil down to nothing more than that Longo has been an attorney for 30 years and that his tenure alone, uncoupled from any skillfulness or competence shown in prosecuting the case, justifies payment of $395 for every hour worked….As far as the Court can tell from the latest fee Petition, Longo's skills as an attorney have not much changed since Judge Cole assessed them.  As such, neither should his hourly rate be increased, nor the time spent arguing otherwise be remunerated.").

### B.  The Laffey Matrix is an improper benchmark for attorneys' fees

Plaintiff also uses the Laffey Matrix as proof that the rate sought by Mr. Longo is reasonable.  (Pl. Pet. p. 5).  However, in *Pickett*, the Seventh Circuit noted that no federal appeals court outside of the D.C. Circuit has formally adopted it, and even the D.C. Circuit has referred to the Matrix as "crude." *Pickett*, 664 F.3d at 650.  Many judges in this jurisdiction have specifically declined to use the Laffey Matrix for a variety of reasons.  *See, e.g.*, *Obrycka*, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013) (declining to use the Laffey Matrix because it "does not take into account an individual attorney's ability, experience, or reputation"); *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1040 (N.D. Ill. 2013) (noting "the Seventh Circuit's expressed preference for other, more direct measures of reasonable hourly rates").  The Court should therefore not use the Laffey Matrix to determine Mr. Longo's reasonable hourly rate.

### C.  Recent decisions establish Mr. Longo's market rate is at most $350/hour

Directly contradicting Plaintiff's claim that Mr. Lango's market rate is $550/hour are the most recent orders on record in the Northern District of Illinois and the Seventh Circuit, firmly establishing his rate as much lower.  *See Sommerfield v. City of Chicago*, 2012 WL 5354987, at *16 (N.D. Ill. Oct. 29, 2012) ("Longo's contention that he should be paid $395 per hour is unacceptable.  If he were to be paid what competent, rule-abiding lawyers in comparable cases are paid, we would create a perverse disincentive for lawyers to conduct themselves professionally.  Against so pernicious a result this court should resolutely set its face.  I recommend that Mr. Longo's hourly rate not exceed $300 per hour.").  Here, Plaintiff is requesting a $250 per hour increase in Mr. Longo's last awarded hourly rate, over a four-year period, whereas Defendants believe an increase of $50 per hour is more appropriate.  Defendants therefore dispute the $550 hourly rate that is requested for Mr. Longo and instead suggest his hourly rate be set at $350.  *See Jeffboat, LLC v. Director, Office of Workers' Comp. Programs,* 553 F.3d 487, 491 (7th Cir.2009) ("[A] previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not."); *Smith v. Altman*, 2015 WL 5675376 (N.D. Ill. Sep. 21, 2015) (using the most recent fee award received by plaintiff's counsel in determining his market rate for the current case).

## II.    REASONABLENESS OF HOURS EXPENDED

Many of Plaintiff's claimed fees are unreasonable and should not be included in the lodestar.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley*, 461 U.S. at 434.  Attorney activities that are unnecessary, excessive, or so vague as to provide any

meaningful insight into whether the hours expended were reasonable will be excluded from an award of fees. *Id.* Here, Plaintiff's claimed hours are riddled with entries that are unreasonable per the Supreme Court in *Hensley*, and therefore should be disregarded. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984) ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys."). The fee shifting provisions of civil rights statutes aim to enforce their provisions, not to provide "a form of economic relief to improve the financial lot of attorneys." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986).

### A. Lodestar

To determine a reasonable amount of fees to be awarded to the prevailing party, courts in this jurisdiction use the lodestar method which involves "multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett*, 664 F.3d at 639. In arguing that the lodestar should not be reduced, Plaintiff relies heavily on *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) for the proposition that "adjustments to the lodestar are rare." (Pl. Pet. pp. 4-5, 8). However, Plaintiff misrepresents the case as the "rare" language was referring to *enhancements* in the lodestar, and not reductions. The Supreme Court said "we have repeatedly said that enhancements may be awarded in 'rare' and 'exceptional' circumstances." *Perdue*, 559 U.S. 542, 552 (reversing the district court's awarding of an enhancement to the lodestar). In fact, *Perdue* did not deal with, mention, or in any way discuss *reductions* to the lodestar. *See id.* Plaintiff further states that *Perdue* contains a "mandate" that the District Court focus on the lodestar and "nothing else." (Pl. Pet. pp. 7-8). *Perdue* contains no such mandate. In fact, the Court in *Perdue* stated that "[t]he lodestar method was never intended to be conclusive in all circumstances." *Perdue*, 559 U.S. 542, 553; *see Estate of Enoch ex. rel. Enoch*

*v. Tienor,* 570 F.3d 821, 823 (7th Cir. 2009) ("The lodestar figure is the starting point in fee determinations and may by adjusted for a variety of factors.").

### B.  Much of Mr. Longo's entries are for unnecessary work

Even a cursory examination of Mr. Longo's time entries demonstrates that the majority of his time was spent on unnecessary tasks.  "In the years in which he prosecuted the merits of the case, Longo engaged in a pattern of litigation tactics that, as Judge Cole recounted, included risking sanctions time and again, 'ignoring court order after court order,' filing motions that were 'frivolous,' 'manipulative,' 'inordinately stale,' 'disingenuous,' 'baseless,' 'nonsensical,' and generally making unnecessary work for all parties involved by evincing an unwillingness to take no for an answer when his motions were denied."  *Sommerfield*, WL 3675722, at *2 (N.D. Ill. Aug. 25, 2017).  As can be seen in his time entries here, Mr. Longo seems to have billed for every single hour worked despite the fact that "the number of hours actually worked rarely equals the number of hours reasonably expended."  (*See* Ex. A): *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646, 651 (7th Cir. 1985).  Thus, the petition itself demonstrates that Longo exercised no "billing judgment," contrary to what is required by precedent and ethical norms.  *See, Hensley,* 461 U.S. at 434.

### 1.  Administrative tasks are not compensable

Many of the entries submitted by Plaintiff contain administrative tasks that are not compensable.  "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274, 287-88 n.10 (1989).  For example, Mr. Longo billed for such tasks as "dictate new date for docket; calendar date; [and] ensure inclusion of new date in docket."  (Ex. A).  These tasks do not require the skill of a lawyer or a paralegal; rather, these are the same clerical tasks which courts have found are non-

7

billable and should be absorbed in the overhead costs of running a law firm. *See Sommerfield*, WL 3675722, at \*2 (N.D. Ill. Aug. 25, 2017) (denying Mr. Longo fees for the very same clerical tasks) (*citing Spegon v. Catholic Bishop,* 175 F.3d 544, 553 (7th Cir. 1999). Accordingly, the Court should exclude all of Mr. Longo's entries in which he bills for administrative tasks.[2]

### 2. Time spent reading court orders

It appears that every time the court issued a minute order, Mr. Longo billed at least 0.1 hours reading this order. As these orders are generally only a couple of sentences long, each entry must be an exaggeration of time actually spent reading the order. This poses a small problem when examined on an individual basis, but a large problem in the aggregate, due to the voluminous orders issued throughout the duration of the litigation. Accordingly, Defendants believe the elimination of these fees is appropriate.

### 3. Commuting time is not billable

Mr. Longo billed the exact same amount of time for every trip he made from his office in Mount Prospect to the federal courthouse in Chicago. Each one way trip was always billed at 1.4 hours, for a total roundtrip time of 2.8 hours. (Ex. A). Courts in this District have clearly held that travel time for commuting is not compensable as part of a fee award. *Franks v. MKM Oil, Inc.*, 2016 WL 861182 at \*7 (N.D. Ill. Mar. 7, 2016) (refusing to award travel time for commuting to court from the suburbs as part of travel time). Therefore, Plaintiff's hours claimed for commuting to and from the federal courthouse should be disregarded.

### C. Excessive billing for emails and phone calls

Throughout the entire litigation Mr. Longo spent an exorbitant amount of time on

---

[2] The fact that Mr. Longo is a solo practitioner does not mean that he should be paid the same hourly rate no matter what work he performed. *Sommerfield*, WL 3675722, at \*4 (N.D. Ill. Aug. 25, 2017) (*citing Montanez v. Simon,* 755 F.3d 547, 565-66 (7th Cir. 2014) (affirming the district court's decision to disallow "time billed for clerical work that was nonetheless recorded at an attorney's rate").

emails—including follow-up emails for non-responsiveness, and reviewing these emails and follow up emails —to and from Plaintiff. (*See* Ex. A). Additionally, Every time Mr. Longo corresponds with any individual via email there is always at least a 0.1 time entry for "review, revise correspondence." (*See* Ex. A). Mr. Longo also spends at least 0.2 hours every time he receives an email, billing "received, reviewed…correspondence." (*See* Ex. A). These are excessive and should be disregarded from his fees. *Taylor v. Law Offices of Vincent Peter Cignarale, LLC*, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) (finding billing in 0.1 hour increments for each email received, amounting to 6 minutes expended per email, is excessive).

### D.  Imprecise and vague description of time entries

Judges in this district have recognized the problem of imprecision in the description of billable time entries, and have adjusted hours accordingly. *See Bretford v. Smith*, 421 F. Supp. 2d 1117 (N.D. Ill. 2006) (reducing fees by nearly 70% due to inadequate documentation). "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or . . . reduce the proposed fee by a reasonable percentage." *Harper*, 223 F.3d at 605. Here, many of the time entries for emails and phone calls are vague as to the subject matter. (*See* Ex. A); *Abbott v. Vill. of Winthrop Harbor*, 1999 WL 675292, at *4 (N.D. Ill. Aug. 24, 1999) ("Evidence indicating a telephone conversation without identification of the subject matter is an inadequate documentation of hours."). Thus, Mr. Longo's vague time entries should not be included in any fee award.

### E.  Excessive time entries

Plaintiff's counsel billed a great deal of time to complete tasks that were excessive and should have taken much less effort given that Plaintiff's counsel has alleged substantial experience litigating employment discrimination cases. (*See* Ex. A, 2015  time records, billable

time spent on Plaintiff's summary judgment response totals 284.8 hours; 2012 time records, time spent "analyzing defendant's documents" 250.1 hours). "Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434.

### F. Plaintiff's hours are unreasonable compared to defense counsel's hours

Courts may take into account the hours billed by opposing counsel in performing similar tasks when determining the reasonableness of petitioner's hours, and may use this to reduce or eliminate certain entries from the lodestar. *See Delgado v. Mak*, No. 06 CV 3757, 2009 WL 211862, at *7 (N.D. Ill. Jan. 29, 2009). Here, the attorneys representing defendants were all Assistant Attorneys General ("AAsG") working for the Office of the Illinois Attorney General. As such, the AAsG did not keep track of their hours spent working on this matter, nor do they bill their clients (exclusively arms of the State of Illinois). Plaintiff repeatedly refers to this fact —that defense counsel does not keep time records—and that this somehow is a deficiency that leads to awarding Plaintiff all of his requested fees. (Pl.'s Pet. pp. 10-11). Defendants are at a loss as to how the fact that their attorneys do not bill their State agency clients or keep track of billable hours somehow entitles Plaintiff's counsel to receiving all of his claimed fees.

Although AAsG do not bill clients, trial counsel for Defendants can attest that his yearly salary is $70,000. (*See* Affidavit of John R. Hayes, attached hereto as Exhibit D). This salary is for an assistant unit supervisor position and is higher than any other attorney who worked on this case. (*Id.*). Moreover, as a member of the Employment Unit in the General Law Bureau, counsel carries an active case load of 20 to 25 employment discrimination cases at any one time. It would take defense counsel working full-time on this case over 24 years at his current annual

salary to reach what Plaintiff now claims are reasonable attorney's fees for a single-employee discrimination case filed in 2012.

Further, Plaintiff baldly claims that at trial Defendants "had multiple attorneys, paralegals, other assistants, either sitting at the counsel table or in the pews." (Pl. Pet. p. 7). Again, Plaintiff misrepresents the facts. Defendants had two attorneys at the trial table who were trying the case, and at all times had one representative from Defendant IDOT at the table. There were no "paralegals, other assistants" that were either at the table or "in the pews" that assisted the trial attorneys. (Ex. D).

## III. DEFENDANTS' OBJECTIONS

Plaintiff argues that it was Defendants that have a "heavy burden" to provide how fees are not reasonable and that this burden was "dumped" on the Court and Plaintiff (Pl.'s Pet. p. 9)—ignoring case law and also the considerable time spent by defense counsel in reviewing and responding to each and every one of Plaintiff's over 6,000 mostly vague, redundant, and unreasonable time entries. (Ex. A). "A district court may strike billing entries so long as the party requesting fees has an opportunity to respond to any objections." *Montanez*, 755 F.3d at 555 (finding the City's line-by-line objections specific enough to allow a response, "and the format was considerably more practical and economical than a long memorandum detailing each objection"). Plaintiff had the opportunity to respond to Defendants' objections in his fee petition. (*See* Pl. Pet.).

Additionally, Plaintiff attempts to paint defense counsel as the "unreasonable" one in that he allegedly refused to "resolve the defendant's objections" to his fees. (Pl. Pet. p. 9). Setting aside the unreasonableness of $1.7 million in fees, Plaintiff's allegations are untrue. Defense counsel responded to every single time entry submitted by Mr. Longo. (Ex. A). Moreover,

defense counsel informed Mr. Longo that he would happily engage in a discussion to come to an agreement over fees, as long as Mr. Longo was willing to negotiate in good faith, *i.e.*, come down off his exorbitantly high number, a fact Plaintiff does not mention in his petition. (July 7, 2017 email, attached hereto as Exhibit E). In fact, Mr. Longo's position was clear that "resolving" Defendants' objections meant dropping them and agreeing to his fees in total. Therefore, it was clearly Mr. Longo who was being obstructionist, while defense counsel responded to Mr. Longo and made clear Defendants' position more than once. (*Id.*).

## IV.     EXPERIENCE, REPUTATION, AND ABILITY

It is not improper for the Court to consider Mr. Longo's "experience, reputation, and ability" in determining a fee award. *Sommerfield v. City of Chicago*, 863 F.3d 645, 652 (7th Cir. 2017) (finding that even though the magistrate judge stated he ignored Longo's "previous mischief" in calculating the lodestar, it would not have been improper for the magistrate judge to take such "mischief" into consideration). Here, Mr. Longo's: (1) dilatory tactics; (2) redundant and unnecessary motion practice; (3) excessive, redundant, and unwarranted communications with his client and opposing counsel; (4) misrepresentations and mischaracterizations of both facts and communications; and (4) filing of frivolous motions not just in this case but in several other cases Mr. Longo has handled, necessitates a downward departure of the lodestar.[3]

### A.    Reputation

Contrary to the vague affidavits provided by Mr. Longo's peers alleging his solid reputation, there are numerous decisions in this Circuit detailing the "mischief" Mr. Longo

---

[3] Mr. Longo's litigation tactics also lead to the filing of unnecessary motions by Defendants. For example, Mr. Longo's refusal to hire a court reporter for depositions he was taking of defense witnesses (and for which he said he would record the testimony on a tape recorder) led to the filing of an emergency motion by Defendants. (Dkt. No. 40). Mr. Longo also billed for the research on this issue. (Ex. A, 9/23/2012 entry). Tactics such as these from a lawyer with 30 years of experience is inexcusable and should not be condoned with a large fee award.

engages in as a matter of course. *See Sommerfield*, 863 F.3d at 652; *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784-85 (7th Cir. 2013) (upholding district court's sanctions against Mr. Longo as "[t]he record indicates that the district court thoughtfully attempted to lead James' attorney towards a more reasonable and appropriate approach to the discovery process, and he declined to follow on multiple occasions. The district court found that rather than using discovery as a tool to uncover facts and evidence to support his case, James was using unreasonable discovery requests as a weapon against Hyatt."); *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011) (noting the "curious evolution of allegations in successive iterations of the complaint" and that they "are riddled with contradictions" that "were drafted by plaintiff's lawyer [Mr. Longo]"); *Atkins v. City of Chicago*, 547 F.3d 869, 872 (7th Cir. 2008) (finding "Longo's failure to ask for an extension of the 90-day deadline within the 90 days" to be "inexcusable," and referring to one of Longo's filings as "strange" and one of arguments as "ridiculous"); *Greisz v. Household Bank (Illinois),* N.A., 176 F.3d 1012, 1014 (7th Cir. 1999) ("Mr. Longo's extensive but inept and wholly unsuccessful efforts to conduct class actions have drawn unusually pointed criticisms from Illinois state judges.") (*collecting cases*); *Letellier v. First Credit Services, Inc.,* 2001 WL 826873, at *3 (N.D. Ill. July 20, 2001) (giving defendant's offer of judgment full weight in light of "such clear and convincing evidence of Longo's attempt to conceal the mistake in the defendant's Offer."); *Mader v. Motorola Inc.*, 1999 WL 519020, at *1 (N.D. Ill. July 14, 1999) (referring to the motion filed by Mr. Longo as "incredibly suspicious" and refusing to consider "correction pages" of plaintiff's deposition as they were "a transparent attempt to change the substance of [plaintiff]'s testimony").

### B. Defendants were ready, willing, and able to settle this matter

Plaintiff claims that instead of moving for summary judgment Defendants "could have,

and indeed, should have, engaged in settlement discussions." (Pl. Pet. p. 3). Plaintiff overlooks

the fact that he attended with Defendants two settlement conferences with Judge Finnegan—one

before and one after Defendants' motion for summary judgment—and the Defendants also

engaged in meaningful settlement talks with the assistance of the Court immediately preceding

trial. To now claim that Defendants chose "to fight this case tooth and nail to the bitter end" (Pl.

Pet. p. 3) is simply disingenuous on the part of Plaintiff. Mr. Longo also overlooks the fact that

he pushed back on—at every turn—the possibility of a settlement conference and also steadfastly

refused to engage even in informal settlement discussions that involved in any way him coming

down from his demand of $1.5 million. (2016 Settlement emails, attached hereto as Exhibit F);

*see Shea v. Galaxie Lumber & Const. Co., Ltd.,* 1999 WL 138791,[*]3 (noting the court's

skepticism of the motives behind counsel's actions in "refusing to consider any settlement at

several pretrial conferences before the court and instead demanding the right to go to trial";

suggesting that counsel's motivation was to expand the amount of attorney's fees).

## V.  PLAINTIFF IS NOT ENTITLED TO AN UPWARD ADJUSTMENT OF THE LODESTAR AMOUNT

Plaintiff also argues for an upward adjustment of 15 percent of the already exorbitant

lodestar (including an upward adjustment of his requested for hourly rate) because it was risky

for his attorney to take this case. (Pl. Pet. pp. 11-15). However, courts have rejected awarding

an enhanced rate based on the general risk of nonpayment. *See Blum v. Stenson,* 465 U.S. 886,

901 & n. 17 (1984). Plaintiff makes several unsupported arguments such as attorneys working

on these types of cases on a contingency basis cannot make a living and the State of Illinois

"refuses to settle." (Pl. Pet. p. 13). Plaintiff again forgets the three attempts at settlement in

front of federal judges, and specifically that the final attempt at settlement with the Court

included a separate amount for attorney's fees. Moreover, the Supreme Court has clearly held

14

that "enhancement for contingency is not permitted under the fee-shifting statutes." *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

Plaintiff also argues the delay in being paid necessitates an upward adjustment in the lodestar, making a somewhat tortured analogy to "Wall Street financiers." (Pl. Pet. p. 14). Again, Plaintiff fails to mention the three (3) settlement attempts and the Rule 68 offer of judgment by Defendants that would have resulted in payment to Mr. Longo. Moreover, as seen in other litigation, it is Mr. Longo's refusal to accept the opinion of the court and his decision to litigate, litigate some more, and appeal his fee awards that leads to the delay in payment. *See Sommerfield v. City of Chicago*, WL 3675722, at *2 (N.D. Ill. Aug. 25, 2017) (awarding Mr. Longo no fees on his second fee petition, prefacing the decision with: "[d]espite having thrown good money after bad by fighting the Magistrate Judge's recommendations and appealing the fee award, Longo followed up on this first-round effort with yet another petition for fees and costs.").

## IV.    PLAINTIFF'S CLAIMED COSTS

In his petition, Plaintiff appears to drop his claimed costs of $4,460.47 and agrees to Defendants' calculation of $4,061.02. (Pl. Pet. p. 15). The Court retains the same discretion to grant or deny costs as it does with fees. *See Baker v. Lindgren,* 856 F.3d 498, 502 (7th Cir. 2017). The Court should therefore award no more than $4,061.02 in costs to Plaintiff.

WHEREFORE, Defendants respectfully request that should the Court order attorney's fees, Plaintiff's attorney's fees and costs be awarded in accordance with the rates suggested by Defendants in the amount of no more than **$286,931.02.**

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

/s/ John R. Hayes
JOHN R. HAYES
Office of the Illinois Attorney General
General Law Bureau
100 West Randolph Street, 13th Fl.
Chicago, Illinois 60601
(312) 814-5022
jhayes@atg.state.il.us

16