IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMARCO NICHOLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12-CV-1789 |
| | ) | |
| ILLINOIS DEPARTMENT OF TRANSPORTATION; | ) ) | Honorable Thomas M. Durkin |
| ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES | ) ) | |
| | ) | JURY DEMAND |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR RULING ON OUTSTANDING ISSUES, SO THAT JUDGMENT CAN BE ENTERED**

**Introduction**

The plaintiff has had a practice for many years of attempting to resolve as many issues as possible with the defendant, so that a motion would be unnecessary. Repeatedly, in Nichols vs. IDOT, CMS, the plaintiff has attempted to resolve the outstanding issues with the defendants, hoping that they would have a change of mind or heart. However, the defendants have not. Instead, the defendants have directed the plaintiff to file a motion. Consequently, the plaintiff has filed the instant motion.

**Prejudgment interest**

The Honorable Judge Durkin has already held that the plaintiff is entitled to prejudgment interest. Also, on 4 August 2017, this Court held that interest would be compounded annually. [1]

---

[1] May it be stated that "'compound prejudgment interest is the norm in federal litigation'"? American National vs. Yellow Freight, 325 F.3d 924, 938 (7th Cir. 2003). Indeed, "absent special circumstances, compound, not special interest, ought to be awarded." Id. See, Dynamics Corporation of America vs. United States, 766 F. 2d 518 (Fed. Cir. 1985) as cited in Gorenstein

1

Repeatedly, the plaintiff has informed the defendants that the law requires that prejudgment interest be calculated until the date of judgment. Repeatedly, the defendants have responded that they will only agree to prejudgment interest until 3 April 2017 when the defendants reinstated the plaintiff. Indeed, the defendants state that the order should state "the Court has determined that Plaintiff is entitled to prejudgment interest, to be compounded annually using the average of prime rates from June 2008 to 31 March 2017". Consequently, the plaintiff presents the prejudgment interest issue to His Honor for his ruling.

The United States Supreme Court teaches that "prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues <u>until judgment is entered</u>, thereby achieving full compensation for the injury those damages are intended to redress." <u>West Virginia vs. US</u>, 479 US 305, 313, n. 2 (1987). Emphasis added. Analogously, as the plaintiff has stated to the defendants in his attempts to resolve the prejudgment interest, even back wages are calculated to the date of judgment.<u>Nord v. U.S. Steel</u>, 758 F.2d 1462, 1473 (11th Cir. 1985), <u>Patterson v. American Tobacco</u>, 535 F. 2d 257, 269 (4th Cir. 1976), cert denied, 429 US 920 (1976), <u>Banks v. Travelers Companies</u>, 180 F.3d 358, 364 (2nd Cir. 1999). In <u>Nichols</u>, however, regarding back wages, the plaintiff was already reinstated prior to the entry of judgment.

Calculating prejudgment interest to the date of judgment is important to achieve "full compensation for the injury those damages are intended to address." <u>West Virginia </u>at 313, note 2. Calculating prejudgment interest to the date of reinstatement, as the defendants insist, would not achieve "full compensation for the injury those damages are intended to address." <u>West Virginia </u>at 313, note 2. "Prejudgment interest...make(s) whole those employees who have been

---

<u>Enter., Inc. v. Quality Care-USA, Inc.</u>, 874 F.2d 431, 437 (7th Cir. 1989).

2

deprived of wages unlawfully....Prejudgment interest also serves to discourage unlawful employment practices by denying to employers the interest-free use of money that is being delayed by administrative and judicial process." Ford v. Altaro, 785 F.2d 835, 842 (9th Cir. 1986).

If the defendant's argument were not rejected, then the defendants would have had the plaintiff's money interest-free from 31 March 2017 until the date that this Court enters judgment. Similarly, if the defendants had paid the plaintiff all of the amounts owed to the plaintiff on 31 March 2017, then the plaintiff would have had use of this money and could have acquired interest on it. As it stands now, the defendants have not paid the plaintiff a dime. In any event, the CPA has calculated that the defendant owes the plaintiff $99,005.57 if they pay the plaintiff all amounts owed by 31 October 2017. Exhibit A.

Based upon the above case law, the plaintiff respectfully prays that this Court will order the prejudgment interest until the date of judgment.

**Pension payments that must be made by the plaintiff**

Until recently, the parties had agreed that the plaintiff would contribute to his pension plan his proportionate amount that he would have contributed since 2008 when he was fired and repay his pension withdrawal. These amounts are $52,359.94, $35,395.45, respectively, as represented by the defendants. The parties agreed that the plaintiff would make these payments within 30 days after the defendants would pay the plaintiff all amounts owed to the plaintiff.

The defendants state that the State retirement agency requires that the plaintiff make all pension payments within 30 days after judgment. However, as the plaintiff has repeatedly stated to the defendants, the plaintiff cannot possibly pay money that he does not have. Once the defendants pay the plaintiff the money owed to him, he will then have the funds to pay the

3

pension fund. The amount that the plaintiff must pay is substantial, $87,755.39.

At the 17 May 2017 hearing, His Honor agreed that the plaintiff would not have to make the contributions to the pension fund until he received the amounts owed to him from the defendants:

> THE COURT: All right. And, Mr. Longo, those are figures that the state has provided. I know you were -- there was some back and forth about dealing with the pension fund and getting information from them. But it appears -- I agree with the state these are amounts Mr. Nichols has to recontribute. I don't think you're even disagreeing with that, as I read this.
> MR. LONGO: Of course not. If it's the right thing to do, we're going to do that.
> <u>THE COURT: And he'll have the funds to do that from his back pay award.</u>
> <u>MR. LONGO: Right. And we agree that after 30 days after we receive the money that they owe us, we would repay those. That's an agreement between the parties.</u>
> <u>THE COURT: All right.</u>
> MR. LONGO: Of course. If it's the right thing to do, we're going to do it.

Emphasis added. 5/17/17 transcript, 11:10-25. Consequently, the plaintiff prays that His Honor will prohibit the defendants from violating the agreement and order that the plaintiff will not have to pay the amount he owes the pension fund until the defendants pay him all amounts owed and within 30 days of such date.

**Date certain when defendants must pay plaintiff**

The plaintiff has requested from the defendants that they agree that the judgment include a date by which the defendants must pay the plaintiff all amounts owed. The plaintiff suggested that the defendants pay all amounts owed within 30 days of the judgment. However, the defendants have refused to include any date by which they must pay the plaintiff all amounts owed.

Setting a date certain is important, so that the plaintiff can make the required contributions to the pension fund. Including a date also leads to finality. The plaintiff requests that this Honorable Court include a date in the judgment by when the defendants must pay the plaintiff all amounts owed.

**Vacation**

His Honor held that the plaintiff is entitled to his lost vacation pay for the past nine years. This Court gave the defendants two options, either pay the plaintiff a lump sum for the lost vacation days or credit him for the lost 165.88 vacation days. The defendants have chosen to credit the plaintiff for the lost vacation days. The parties have gone back and forth regarding vacation days. At the end of the negotiations, the defendants would only agree to stating in the order that the plaintiff will be credited with the vacation days:

> The Court has determined that Plaintiff is entitled to reimbursement of his vacation days. Had Plaintiff been working after the defendants fired him in 2008 until April 3, 2017 (his date of reinstatement) Plaintiff would have earned 165.88 vacation days. Defendants are ordered to credit Plaintiff with those vacation days.

The defendants will not agree that the order should state that in the event that the plaintiff does not use his vacation days, he will be paid for those days when he separates from his employment with the defendants. The defendants state that the collective bargaining agreement states this.

The defendants have a policy that if employees do not utilize their vacation days, they expire. The plaintiff requests that the order state that the plaintiff's vacation days will not expire and will remain in his account until he utilizes them. The defendants have refused to provide this language in the order. Also, aside from the order, the defendants have refused to provide any

5

type of written confirmation to the plaintiff that his vacation days will not expire pursuant to the defendant's policy when employees do not utilize all of their vacation days.

**Sick days**

This Court may recall that it ordered the defendants to reimburse the plaintiff for 105 sick days accrued since 2008. This Court ordered the parties to calculate the amount owed to the plaintiff. This Court may recall that the plaintiff has mentioned a couple of times that he was attempting to avoid as much as possible the retention of a CPA to save unnecessary costs. Having said that, over the past several weeks, the plaintiff has become increasingly concerned over the amounts presented by the defendants and how they were calculated. Indeed, though the plaintiff requested on several occasions that the defendants present to the plaintiff the background work on how they calculated various amounts, the defendants would not.

In any event, the plaintiff retained a CPA. He determined that the amount represented by the defendants to be the amount owed for sick days was wrong. The CPA provided his reasons why. The plaintiff presented these reasons to the defendants to give the defendants the benefit of the doubt. However, despite the plaintiff's several inquiries for an explanation of the discrepancy, the defendants provided none.

According to the CPA, the defendants calculated sick days at $24.25 per hour. The CPA took the average of all of the plaintiff's hourly rates and determined that the hourly rate was $33.50 per hour. Indeed, since 2008, the plaintiff's lowest hourly rate was $30.49 per hour. Yet, the defendants calculated the plaintiff's sick days at $24.25 per hour without any explanation. In any event, the CPA has determined that the defendants owe the plaintiff $27,738.38. Exh. A.

Wherefore, the plaintiff prays that His Honor will grant the plaintiff's motion and enter a ruling regarding the outstanding issues, so that the parties can then incorporate this Court's ruling

into the final draft order which can then be presented to this Court, so that judgment can be entered.

>Respectfully submitted,

>/s/ Joseph Anthony Longo

>_____

>Joseph Anthony Longo

**J.M.J.**
**LONGO AND ASSOCIATES LTD.**
Joseph Anthony Longo
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9497
Longo-Associates@SBCglobal.net
Attorney No. 53635

## CERTIFICATE OF SERVICE

  I, Joseph Anthony Longo, an attorney, certify that I served this PLAINTIFF'S MOTION FOR RULING ON OUTSTANDING ISSUES, SO THAT JUDGMENT CAN BE ENTERED by electronic filing on 9 October 2017 after 5pm. Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

_____
Joseph Anthony Longo